Case 24-1155, Julie Tamm et al. v. Milan Nerad. Oral argument, 15 minutes per side. Mr. Ellison for the appellants. Thank you. Good morning. Philip Ellison appearing on behalf of the appellants on this matter. I'm reserving three minutes for rebuttal. I think the panel, I know you guys learned I was down the hall and I just rushed down from the prior, the other end of the sixth floor down to here this morning here. So I may have made a little bit of a bluster when I came in. The issue before you today is the differentiation between Tamm 1 and Tamm 2. That's what this case boils down to. In Tamm 1, the zoning administrator attempted to enforce the Waterfront Park 2 ordinance for Lincoln Township. That resulted in a consent judgment invalidating certain parts of that particular ordinance. Thereafter, once that consent judgment got entered, Mr. Nerad, as the enforcement officer, began harassing my clients. And when that harassment didn't work, he turned to his official powers and he didn't try to enforce under the Waterfront Park ordinance number 2 anymore. He turned to a different ordinance. Now, I use the acronym, but I'm going to call it today the Lake and Road End Access Easement Ordinance. The L-R-E-A-E ordinance is what I refer to it throughout the brief. What's important on this is that up until that point, until January of 2023, Mr. Nerad never attempted to enforce that ordinance. And it's our position that he only enforced that ordinance in retaliation because of his displeasure in the forced settlement upon him of the Tamm 1 litigation. Now, the argument... Okay, this ordinance has to do with docks being in the water? So the Waterfront Park deals with one specific, well, technically two pieces of property. What are privately owned property that has a public component that the public, not the township, that the public can have access to? The Lake and Road End Ordinance applies to the entirety of Diamond Lake. So when Mr. Nerad was attempting to enforce the, and both of these were fairly new ordinances when Tamm 1 was started. But the ticket was written for having part of the dock in the water in the off-season. Is that right? That is correct, but only under the Lake and Road End Ordinance as the later one. The original ticket in Tamm 1 was only under the Waterfront Park 2 Ordinance. Right. Now, why I think that's important is because this court, when I brought Tamm 1, I did not have, it was unripe, the district court did not have jurisdiction to consider a legal challenge to the Lake and Road End Ordinance because it had never been enforced at that point. And in fact, even when I brought Tamm 2, it had literally only been enforced once against my client with the one dock. And as the drone video shows, I don't know if this court's had a chance to review the drone, you at least have the screenshots of over and over and over again of, there are literally dozens of docks that are in violation of that Lake and Road End Ordinance, and yet none of them were ticketed. Should we care about the fact that your clients were the, apparently, at least from the photos that you included, and you can correct me if I'm wrong here, it looks like your clients were the only ones who had their docks apparently partially in the water for the public-accessed property. Is that correct? So I think that's a fair distinction, but the ordinance that it was enforced on was the ordinance applied to the entirety of the Lake, not just park property. Because Mr. Nerad could no longer enforce the ordinance under the Waterfront Park Ordinance No. 2 because the TAM 1 Consent Judgment and Injunction prohibited him from enforcing it in that way. So effectively what happened was when Mr. Nerad was no longer able to enforce it the way he wanted to enforce it because that power was taken away from him by myself under the TAM 1 litigation, he went to a different ordinance, a wider and different ordinance that applies. Now I know my brother counsel is saying, well, you know, you're the only one that's got part of the park property. That's largely irrelevant, and it's irrelevant because the Lake and Road End Ordinance applies if it was a park, if it was a road end, if it was private property, if it was public property. It didn't matter because the Lake and Road End Ordinance applies to Diamond Lake as a whole. Was there a grandfather for permanent docks? Because aren't some of these docks permanent docks that stay in the whole year? The short answer is that by the time we, I can answer that question now, at the time that was never raised as an argument. It applies, the Lake and Road End Ordinance applies to all docks regardless if they're seasonal or permanent. There's no distinction between those two. Now I can tell you today some of those docks are permanent, some of those docks are seasonal, and they were kept in throughout the entire prohibitory period of November to April. But they weren't grandfathered in? They were not. There's no grandfathering under the Lake and Road End Ordinance. Now the Waterfront II, the earlier, the ordinance that was enforced first against just the park, did grandfather certain aspects of my client's property, but not the later ordinance that was enforced. Well it didn't apply to the whole lake anyway. Well the Waterfront II, correct, the Waterfront Park II ordinance only applied to effectively, they call it a park, it's not really a park, but I mean that's what kind of drives me nuts about this case. But it's really a shared piece of property that the township decided to regulate. Now if you look beyond, if you get to my, the issue I've raised about whether or not, I'm going to kind of pivot for just a second, if you get to the part about where there's the issue involving whether I'm res judicataed, I'm actually challenging the government's ability to even regulate docks in this fashion under Michigan law. Townships, in my belief, do not have the right to regulate docks. Well isn't that in the Michigan courts? So that's in the Michigan courts. I raised it here. It's in the Michigan courts under a different client I have there, Mr. Walsh in that respect. So that issue has been raised, we raised it here first. And when Judge Beckering, Judge Beckering... What's the nature of that claim? The nature of the claim for us is it was a defense to the ticket that Mr. Nerad issued that served as the basis for this lawsuit. But that should be, why would that be in this court? Because we were challenging, we were, because the district court had supplemental jurisdiction to decide state law claims in addition to the constitutional claims that we are alleging there. So in addition to saying you enforce this ordinance in an unconstitutional manner, one, and number two, even if you looked at the ordinance, these ordinances are preempted and they're not enforceable. And if they're preempted under state law, the townships, they become void. They're not enforceable. But the court also could have just sent that back, right? Well there was no, this was not a removal case. This was an original action in district court. Now they could have declined to exercise supplemental jurisdiction, but it didn't do that here. What it said was, is you're barred from enforcing, you're barred from challenging the Lake and Road End ordinance because of what was resolved for the Waterfront Part 2 ordinance. And that simply can't, as a matter of law, that is in error. Because at the time when TAM 1 was decided, the federal district court did not have jurisdiction over those claims. And you say, well how can that be? Because the uniqueness of Article 3 with federal courts is a township or a township official has to enforce or threaten to enforce an ordinance before federal courts have jurisdiction to consider legal challenge. I'm sorry to interrupt you, but didn't the consent judgment in TAM 1 expressly kind of have a, I won't call it a carve out, it had language in it that said that, you know, these are the provisions of the consent judgment and included in that is that TAM will be held responsible, and I'm using stronger language than what was in there, but for following all other, and it had this really big catchall, any other ordinances or provisions that apply. But she agreed, but at that point, you have to remember at that point, those other ordinances had never been enforced against any person. But they were on the books. They were on the books, but they have to be enforced to be, before the trigger is before you can challenge any sort of ordinance at a local level, they have to be triggered first. They actually have to enforce. There's lots of ordinances and laws that are on books that aren't enforced. Why isn't that TAM consenting to abide by any of the ordinances that were applicable to their doc there based upon the language that's in the consent judgment? Just because they agreed to do that, the question you're really, and I don't mean to be trying to reframe it, I think is what you're trying to actually ask me, is you're asking about what is the scope of the release, I think is what you're asking. Because even if we agreed to abide by something, we didn't release them from future claims that would have arose out of that. Really the question is what was released, and if you look at the very specific nature of the release in TAM 1, it wasn't all possible claims that could ever accrue ever in the future, ever again. It was only for those for the waterfront to park litigation or litigation that could have been brought up during TAM 1, and that's the important trigger. That's the important hook right there, is because in TAM 1, until the township enforced on its books, a court does not have jurisdiction to entertain an enforcement action until there's actual enforcement or, I was the lawyer on the McKay case, which was the one about Ms. McKay versus Fetterspiel, which is when does something become eminent enough for the court to enforce? It has to be like you're just about to enforce this ordinance in that respect. Simply having a law on the books is not enough for a court to have jurisdiction to consider a challenge to those ordinances. That is the Catt case that I cite to you from the 6th Circuit, that's also the Doe versus University of Michigan case. Same principle that applies here. It is black letter law in this circuit. So when we settled the case in August of 2022 in TAM 1, the lake and road ends access ordinance had never been enforced in that township. Counsel, with regard to the issue of claim preclusion, what, if anything, was decided in TAM 1 that would control or impact the law to be enforced? Nothing. Nothing. Because Judge Beckering concluded that those were claims that could have been brought and were not resolved. And the reality is those claims, because of precedents like Catt and Doe, those could not have been brought in TAM 1. That's why collateral estoppel does not apply. I cite both federal law for this, there's actually, and I could get it for you, there's also a statement under Michigan law, it applies the same way. Until there is enforcement, that is when it ripens, and when it ripens, then the courts have jurisdiction to challenge that aspect. Until that actually happens. So the reality is that, if I may just finish my thought here, the lake and road access ordinance that was first enforced the very first time by the township was after TAM 1. That was the first time that a court could actually consider a legal challenge to the preemption, all these underlying state law doctrines that would say whether or not this ordinance was a valid exercise of township power. The court, Judge Beckering in TAM 1, never answered that question because we reached the consent judgment. Okay. All right. Thank you. Unless the court has any other questions? Let me just ask you one thing. Is there anything in the record as to this ticket dispenser person, Mr. Narad, I think his name, is there anything in the record as to what's motivating him to allegedly treat your clients different from the other citizens around the lake there? The only difference that I can see, and this serves as the basis for our TAM 2 lawsuit, was that he was angry by the fact that he got his power taken away and was told he was wrong in TAM 1. And I would point this court, I think the best case this court could use to analyze this is Hazel versus Quinn, and that's a Judge Lawson case. It's 393 F sub 2nd, and this is in my brief, with the starting site of 884. It's an Eastern District 2013 case. It literally lays out the exact analysis about what do you do in these situations when I'm alleging your, I have retaliatory animus or retaliatory intent A, and the government official says no I didn't. Judge Lawson, and it's been recited numerous times over, it says mere denial of retaliatory intent, in this case by the defendant, is insufficient to permit a defendant to prevail on summary judgment. Can I ask another question? What role does probable cause have in this case? So it's my position that probable cause has no role in this case, because that was a defense that was raised by Mr. Nerad's counsel, and to say, well, but she's guilty of the crime. She's guilty of the ordinance violation, her dock, which is kind of a... These are civil infractions, right? These are civil infractions, but importantly, civil infraction, tickets, those are all considered adverse action. There's a well, I go through those, the best one is Garcia from the 8th Circuit, tickets, the inconvenience of having to go into court and defend on these is the adverse action under the First Amendment. I only ask that, because is probable cause the standard for which he had to issue the  Probable cause was the standard to issue the ticket, however, probable cause is a defense to a First Amendment retaliation claim, unless, and that's the Nieves exception, Nieves and Gonzalez, the Supreme Court, even while this, just while this case was pending, issued the Gonzalez case, and they came back and said that when there is evidence that only one person got the ticket, probable cause is not a defense to a First Amendment retaliation. You're saying, you're not arguing that this probable cause framework doesn't apply, you're saying that the exception applies because they were the only ones who got it. I think that's what I'm trying to articulate. I would say the probable cause doesn't have a basis here because the Nieves exception is the applicable framework to go forward. All right, thank you. Okay. Thank you. Good morning. Good morning. I represent the Lincoln Township Zoning Administrator, Mylon Nerritt, and I've got an argument prepared, I've worked on it hard, but I'm going to start out by answering some questions that you raised by counsel. Judge Clay, I'm going to start out with your question, what was the evidence of motivation? And I think what gets overlooked and ignored, frankly, is that these are new township ordinance, relatively new. They were both adopted around the same time. That's what's referenced in the complaint, it's referenced in the judge's opinion. Mr. Nerritt, after these ordinances were adopted, started to enforce them. I mean, he gave them a notice, we're going to, I forget the exact words, but it's in paragraph 44 of the first complaint, he threatened to enforce the ordinance. So the point I'm making is the intent to enforce the ordinance occurred before any alleged protected conduct. Point two, Judge, there was no motivation. It's not like he was angry. The consent judgment was negotiated over a long period of time, it was very detailed, there's a lot of paragraphs, it has to be read in full. It was a favorable outcome for the township. I'll say that again, it was a favorable outcome for the township. But what about Mr. Nerritt's statement that the lawsuit should, I think he said something along the lines of it should be thrown in the trash? He made a comment when the first lawsuit was filed. He was upset by it. And the first lawsuit was filed, we proceeded on to the consent judgment, and the consent judgment, and I want to talk about the consent judgment for a minute. Remember the first lawsuit was filed because as counsel just said again this morning, his clients don't like the ordinances. His clients strongly believe that the township has no business regulating the park property. They don't think it's a park. They've argued that throughout their first lawsuit, alleges that for reasons that are unknown and not based on any rational basis, officials from this tiny township decided they needed to regulate, heavily regulate, the park property. Okay, they don't like the township ordinance. They don't like the fact that their property is on a park. Okay, they filed a lawsuit when there was a threat of enforcement, a multi-cow complaint that gets reduced to a consent judgment. Your honors, when you're dealing with property rights, with people that live on the property, you're going to have not only what's happening now, but what's going to happen in the future. It is very common in practice, it's very common for courts to look at this situation and endorse a consent judgment that goes more than just, it's more than just a settlement of the case. It's intended to help guide future conduct between the parties. And that's why it's so carefully deliberated. That's why it runs with the land. That's why a lot of detail went into it. And so, from our position, when the second lawsuit was filed, we filed a motion for judgment on the pleadings, and we raised the issue of race judicata, and a very similar issue, but a very important issue, that the binding terms of the consent judgment allowed for enforcement of applicable township ordinances. It's baked right into the decision. And what I need to stress, your honors, is that, and I can't enhance what Judge Beckering had analyzed. I'll just leave it to her opinion to read the entire agreement, and she concluded that the cornerstone of the litigation dealt with the regulation of a private dock on park property. Judge Beckering analyzed the terms of the consent judgment, and she, on page 18 of her opinion, concluded that the plain terms dealt with the placing of a boat dock on park property, and that it is subject to the applicable ordinances. And that Judge Beckering concluded this like access ordinance, quote, falls within the ambit of applicable township ordinances. That's how she read this consent judgment. Finally, Judge Beckering concluded that completely removing docks from the park shoreline was related to, if not the same subject matter of the case. That was how the judge read this consent judgment. That's how defendant read the consent judgment. I'm a little confused. Is this case about whether they can leave it on the shoreline, or is it about the fact that it was still partially in the water? It's a little of both, and I'm glad you raised that question, because let's think about this. Visualize the shoreline, and you've got the waterfront park ordinance says that off-season, you're only entitled to a seasonal dock, but off-season, you shall not store it on park property. So, if you comply with that ordinance. But I thought this lot was exempt. No, it allows for a seasonal dock, but the statute, the ordinance requires that off-season, it cannot be stored on the park property. That's just what it says. Section 4.3, no dock shall be stored on or near the parks except for a seasonal dock. So, you put your dock in the water, these are portable things, you pick them up and you move them. During the season, you have your dock in the water. After the season, you take it out. It's a seasonal dock, but you can't store it on park property. Which ordinance is that? That's the waterfront park ordinance. That's the one that was the subject of the litigation? Yeah, the first one. And what's interesting about this is that even after all that, even after the lawsuit, after the consent judgment, they're not complying with that either. So we have to write another ticket. The other companion ticket has to do with not taking your dock completely out of the lakeshore water. Okay, is that in front of us? Yes. There's two tickets. One ticket was resolved and they still are ignoring it. The waterfront park ordinance, after all this, now... Okay, so an issue before Judge Beckering and before us is whether that ordinance says they can't store it or whether the consent judgment says they can't store it. I just would ask that it's both the consent judgment and the ordinance. You read the consent judgment line by line, it tracks the ordinance. And from a fair reading of that statute, you cannot keep a private dock on park property off-season. But doesn't it... It allows on this lot, is exempted from that. Only to the extent you've got a seasonal boat dock. But that's what they have. Yeah, during the season they have their dock in the water. After the season they take their dock off, but they cannot store the dock on the park. But it says maybe installed at the shoreline and bottomlands or West Park as follows. And then it's their lot shall each be allowed one seasonal dock. So it's a seasonal dock, it's in the water during the summer and it's on the shore during the winter. No, because you can't store it during the winter on park. But it says this is an exception. That lot is an exception. It's an exception only because they can put in a seasonal dock. Well that certainly is open to interpretation. And did... I think it is, but that's... Was that one of the things that Judge Beckering decided? That this is a violation of the ordinance? She decided that two things. One is that the terms... She granted judgment on the pleadings. She granted what? Partial judgment on the pleadings. She said the claims challenging the validity of the ordinance are barred by res judicata and are barred by the terms of the consent judgment. Okay, that's a different question. Right? Well, that was what she decided as far as the validity of the ordinance. Okay. Alright? And I don't know what the other component of what she decided had to do with the constitutional claims.  So she never decided, at least as I understand it, this issue of whether storing it out of the water on, you can call it the park or the beach, whatever it is, is an ordinance violation. Was that issue decided? Point me to where it was decided. I'm trying to think of... There were no tickets issued when the judge issued her opinion. There was a challenge to the ordinances. There was a challenge that they were unreasonable, a challenge that we didn't have the authority to do it, the challenge that the ordinances constituted a taking. And that's what the judge was addressing, that those claims, taking claims, unreasonableness claims, state law claims, were previously resolved in the first case by way of a consent judgment. Now, after this happens, now after the consent judgment is entered, and again, can I just address, I may be repeating myself, but in my practice I do a lot of land use zoning and it is very common, when you want to finish a case, you want to try to finish it. You don't want to have to go back. You want to button it up and try to define moving forward, how are the parties going to treat each other, how are we going to act, you know, and so you've got a document that's not just a release or just not a settlement. It is a court endorsed. It has a power of injunctive and declaratory power, but we try to move ahead. And that is why in this consent judgment you have repeated reference to the fact of recognition that the other ordinances that pertain to the use of park property would apply. And if I could shift gears, because I think it's important to understand the scope of that consent judgment, the race judicata principles and the binding terms of that agreement to kind of apply that as we move forward and look at these constitutional claims. Counsel, as you're addressing that, I want you to be able to go in the order that you want, but will you ensure that you reserve some time to talk about the probable cause issue? Because I do have a follow-up to Judge White's question on that.  I'll get to that right now, in fact. Well, if you're going to get to it right now, then maybe if I ask my question, that'll direct the conversation a little bit. And perhaps it's a little bit academic, because it sounds like plaintiffs are not making this argument necessarily, but I do have a question regarding, I mean, your defense is that there's probable cause here, and so since this is a retaliation claim, unless they can show that there wasn't probable cause, then there's qualified immunity. That's certainly true in terms of retaliatory arrest and retaliatory prosecution. It's usually in the criminal context. Is there some precedent out there for using this probable cause defense when the retaliation has to do with something that is a non-criminal event? Your Honor, you prefaced your question by saying this may be over-academic or whatever, and I've got to confess, this is somewhat going over my head. I did raise probable cause. I'm not hitching that, I'm not counting on this Court tracking that analysis. My main point that I'd ask the Court to consider is a minor point, and I'll answer a question on this, is this an adverse action in this circumstances, and two, whether we look at this in a First Amendment lens as an adverse action for a protected activity or the selective enforcement as a vindictive enforcement, I think it comes down to the absence of any credible causation here, and I say that on the adverse action piece, and I don't want So you're saying we don't really need to trouble our mind on this probable cause issue. I don't think you do, and I just had a comment on whether an ordinance citation is adverse action. I'm understanding if you read law books and it talks about adverse action, and there's cases that say, yeah, a civil enforcement action can be an adverse action. I get that, and there's cases on that. But here, there's something that I really would ask the Court to ponder. In this case, the tickets that were issued are consistent with enforcing the terms of the consent judgment, and on page 18 of Judge Bannon's opinion, and again, I don't want to read it, but it's really well written. Her detailed analysis, she concluded beyond race judicata, these were binding terms, and it had to do, and I recited them earlier, but if Judge Beckering concluded that these ordinances are enforceable, that the parties had recognized that they're subject to these ordinances, I really don't see how, and if the defendant reached the same conclusion that these ordinances are enforceable, in terms of the consent judgment, how you can ever get to a place where you morph the decision to proceed on that as any constitutional claim, whether it's First Amendment or selective enforcement. And again, I'll just, I don't know if I answered your question, or if I, I don't mean to dodge it, it's just, I think the things that I would ask the court to consider when it's all said and done, is to recall that enforcement action was taken before any lawsuit, so that, so, and that point should not be overlooked. But that one, yes, but that's a job. But say that he's doing it because of protected, they had an interest in enforcing this, period, and it's not, it wasn't because of protected activity. The other thing I'd ask you to consider, and I really think this is important, under any type of analysis, whether First Amendment or equal protection, they are the only ones that store their portable dock on the shoreline, on park property. Counsel, it's your approach to this lawsuit, your clients, that the basis for the dispute is entirely, almost entirely, a matter of the interpretation of the consent judgment from that first case, because the plaintiff is bringing, is alleging, as you know, constitutional claims, and they've got takings claim, and they're bringing up inverse condemnation, and some of these things they're bringing up would be relevant, you would think, if the plaintiff had property interest in that strip of land where they put their boat on the lake there, and as I understand, they're not actually property owners, so to speak. So how does that factor into the dispute here? And you're going to hear counsel get up and say, this isn't really a park, but I think we need to be respectful of the fact of what's in the, what was decided by Judge Beckering. Well, let's get off what Judge Beckering has to say and maybe... Let me ask you, the first lawsuit raised taking claims, they said regulating this property is a taking. That was in the first lawsuit. The first lawsuit was resolved not only in all the things we said before, but it settled all claims that were made or could have been made. That had to include the taking claims. Well, you can't have a takings claim if you don't have any vested interest in the, whether they claim they have a vested interest based upon their being permitted to put boats there over the years, but these are not purported property owners, wouldn't you say? And I would say this too because when we filed our initial motion for judgment on the pleadings, one of our arguments was a failure to state a cause of action, and that's, some of those arguments were raised there, and that is something Judge Beckering did not get to. All right. I'm way out of time. All right. Thank you very much. You made a statement that they are the only ones who store a seasonal dock on the shore. Can you give me, where would I find that? Well, it's several places. What's most striking to me is that their complaint attaches a picture of it, and the park property, there's a picture, there's one dock, one boat slip on the park property, and that's them. I asked them in the deposition, do you know anybody else that stores private boat docks on park property? No. I mean, I think we, in our briefing, we've got a lot of citations to that important point. Thank you. Thank you. Any rebuttal? Judge Davis, to answer your question, I don't know if he formally conceded probable cause as a basis. He got pretty close. To the extent he didn't, the case you would look for about where it applies in these non-criminal conducts would be your Hazel versus Quinn case I just cited from Judge Lawson earlier. That was a actual, it was a speeding ticket and a, I think it was a, he had a Ron Paul sticker that they were alleging, and the sticker was blocking those. That Judge Lawson, again, it's a district court decision, but Judge Lawson said that's least to go to a jury because, again, the important part of that decision that gets cited for that, every once in a while a district court case becomes kind of the black letter law sometimes in court cases, said that simply denying that you had retaliatory intent is not good enough to establish you didn't have retaliatory intent. There's got to be something more, and our position is this case lacks that something more. Okay, so since, so now that you've pointed me to Hazel v. Quinn, and I knew Hazel v. Quinn, I was looking for a Sixth Circuit case, but I got you, then I have a question about your response with Neves. So as I understand your argument, it's that, hey, this was only being enforced against Tam, and it wasn't being enforced against other folks. For purposes of saying, of looking at comparators, why should we look at the entire lake? I know you say the ordinance applies to the entire lake, but if before their Tam One, the city was or the township was seeking to enforce this as to the public property, after Tam One, they were still really kind of focused on the park property, are they good comparators for us? No. Don't we need to look at someone else who's got? That is a perfect question because this is, if I can leave you with nothing else from this oral argument today, is this is where Brother Counsel and I fundamentally disagree, and I think it gets lost in the argument. Tam One was not a general challenge to all possible ordinances. You can pull up the Tam One complaint from the Western District docket. It was specifically and only a challenge to the regulatory power of the Waterfront Park Ordinance, full stop. That's it. So that applied. That ordinance, and I'm not going to say one, effectively it's two, there's another little piece of property on another part of the lake, but effectively that Waterfront Park Two Ordinance applies to two pieces of property only out of the hundreds that are around the lake. We resolved that case and we reached an agreement that said we're going to continue on with our ordinances. We released them only from enforcement of the Waterfront Park Two Ordinance. That's it. So later on, we assumed everything was done, then, and following that, that's when Mr. Nerad then comes in and says, well, I'm not going to enforce the Waterfront Park Number Two Ordinance anymore. I'm going to enforce the Lake and Rodan's Ordinance, and the Lake and Rodan's Ordinance applies to the entirety of the lake, regardless of your park property, private property, doesn't matter what kind of property, it applies equally and generally to everyone. So that gets to the point of your question is, the comparator in TAM Two is everyone around the lake, not another piece of park property. This is where we disagree. There was not a general challenge to this overall notion of townships. This wasn't a law school debate about the role of townships in regulations. TAM One challenged one particular ordinance, TAM Two challenged another particular ordinance. You can't cross those streams. And that's where Brother Counsel gets confused because he said, well, I just assumed after TAM One that everything was all solved, like all possible problems that the township ever had are resolved. It's not. Look carefully at the release. It only releases to issues as to the Waterfront Two Park Ordinance. Okay, and the other question that I ask, whether storing it out of the water on the water, is that at issue? So it's my position that, how do I want to say this, it is at issue in the case where I think we're disconnecting is Judge Beckering didn't have to make that decision in TAM One. And she said, I don't have to answer it in TAM Two because res judicata applies. So she never actually answered it. It's our position, our reading of the ordinance, just what you just said right up the right when you're going to get the question mark and you're looking at your papers, your interpretation of what rights Ms. Tam has as to the use of the park is exactly how we read it. That is exactly how we read it. And which court entered the consent judgment? It's the same court, but it was TAM One was the consent judgment. So to answer your question is, Judge Beckering dodged the bullet, and I'm being kind of flippant, but dodged the bullet because we reached a resolution and consent judgment in TAM One. She never had to interpret these things, right? And then when I come back in TAM Two and I'm challenging a different ordinance, she comes back and says, Judge Beckering says, well, I don't have to deal with this because this was already dealt, this could have been dealt with in Part One and it wasn't. It could not have ever been dealt with because it's a different ordinance. Now, they have similar topics. True. Oh, I'm sorry. I'm sorry. I apologize. So to answer your question forcefully there is, it never got, it's at issue, but it never got answered. Unless the panel has any other, thank you for that. I appreciate it. Thank you very much. Thank you. Thank you. Thank you. The case is submitted. There being no further cases for argument, court may be adjourned.